The case of the day is Soni v. Ur Jaddou. Mr. Banias. Thank you, Your Honors. May it please the Court, my name is Brad Banias and I represent Mr. Umeshkumar Soni, the appellant in this case. The statute the lower court relied upon to preclude jurisdiction over Mr. Soni's delay claim leaves room for delay claims because it does not evince clear and convincing congressional intent to preclude judicial review of delays. It is reasonably susceptible to divergent interpretations and that is the death knell the lower court's opinion. In the interest of time, Mr. Banias, is what you're asking for for a federal court to state a date certain by which the, you know, request for the waiver should be decided? No, Your Honor. I'm asking for the lower court to compel final agency action and to do so under 5 U.S.C. 7 to 4. Without giving a date or timeline or anything like that? Your Honor. I mean, there's no indication that the agency's not going to act. I mean, your client's point seems to be, well, fair enough, but I need a decision. I'm in real limbo here. I think 70601 embodies two different causes of action. One is a more traditional mandamus claim where there's an unlawful withholding. The second one, which is unique to the APA, is an unreasonable delay claim where we determine whether Mr. Soni's 32-month wait period is reasonable or not. So you want a federal court to, if all worked out for you, what would you have the federal court order say? Your Honor, it would declare a 32-month delay unreasonable and compel the agency to make final agency action within a reasonable amount of time. And whether that's 30 days, 60 days, 90 days, that's up to the court. These cases are very rare. They go all the way to summary judgment, your Honor. But there's one out of South Carolina in an immigration context where the judge looked at, after discovery, looked at the statutory intent, regulatory intent, the agency's facts that supported their claim for a reasonable delay and said, 15 months. After it crosses 15 months, it's an unreasonable delay and I can compel final agency action. And I think that's what I'm asking the lower court for here, is to determine, is to look at the actual facts. The agency... What if they don't act within that time? Then I think they would be in contempt of a court order, your Honor. And we would have the ability to have the judiciary check the executive when it waits and goes beyond a reasonable amount of time. Counsel, how do you treat the Patel case, which broadens the effect of the use of the term regarding? I know it's a different part of the statute, but it does tell us that it could include an inaction. So, two things about the Patel case, your Honor. One, it used the word any. It doesn't use the word regarding. It uses the word any. Any is a broadening adjective. The term regarding is a limiting preposition. It connects two different words. Here, it connects action, decision, with waiver. So, this statute only precludes review, and that's a key term here. Not compelling agency action, but review of an agency, decision, or action about a waiver. It speaks nothing to whether we can challenge the delay associated with it. So, that's the first thing with Patel. Second thing with Patel... So, the words are different. One is broadening, like Patel said. This is more limiting. The other aspect of Patel is that it is a completely different statute, and this is an exercise in statutory interpretation. And that's 1252A2B, and this is 1182A9B5. And I'll say, they have different history, different structure, different purposes. And I do think, you know, the meat of this argument, at least in the briefing, has been what is a decision and what is an action? And for this court to affirm the lower court decision, I think it has to interpret action to mean inaction, and decision to mean indecision. I don't understand that line of argument. One action of the Attorney General is to assign personnel, right? You assign some, a particular number of people, to work on these kinds of waiver applications, and you assign other people to work on other things. That's an action by the Attorney General regarding these waivers. Why isn't that the right way to understand this clause? Your Honor, if those facts were for this court, I wouldn't disagree with you. But there is no evidence in front of this court, especially at the 12B stage, that that's actually happened. And maybe I can exemplify that. Are you alleging that the Attorney General has told members of his staff just to twiddle their thumbs and not to work on immigration cases at all? Your Honor, I think it's equally likely that the facts prove that Mr. Sonny's application has been sitting on a shelf for 32 months and had nothing done with it. Because I've seen discovery prove that. No, you, we know that the time taken on average in these cases has gone way up. It's now at 42.6 months, right? It's not just Mr. Patel. It's all, no, sorry, not Mr. Sonny. It's quite a number of other people. So are you alleging that the Attorney General has told his staff just to twiddle their thumbs? Or are we looking at a problem of how you allocate a limited number of employees to a very large number of tasks? Your Honor, I don't know the answer to that. Because we haven't done discovery. Look, I am asking what is alleged in this complaint. Yes, Your Honor. Are you alleging that? We are not alleging they are unlawfully withholding agency action completely. We're saying they're unreasonably delaying it, which is an equal cause of action. One example I think that might help here is the terrorism-related inadmissibility ground context, called TRIG. In those cases, there's a policy memo from 2008 that says, hey, the three agencies that apply these and create exemptions, we're going to put all these applications on hold. We're going to tell the adjudicators to twiddle their thumbs while the agency heads come together and determine whether we're going to provide exemptions for certain terrorism-related inadmissibility grounds. That's not here. If that were here, this would be a totally different case. I would point to a case called Earshad v. Johnson, 754 F. 3rd 604 from the 8th Circuit. I recognize it's the sister circuit, but it's a really good explanation of that process. That's not here. We don't know if it's here, right? We filed a complaint and the judge dismissed it before we could seek discovery or pursue a record or find out what the actual facts are. And that's what Mr. Soney is trying to do, is just to get his case heard. And I'd like to reserve the rest of my time for rebuttal. Thank you, Your Honors. Certainly, Counsel. Mr. Winn. May it please the Court, James Winn for the Government. Congress enacted 8 U.S.C. 1182 A. 9 v. 5, which grants the Secretary of Homeland Security broad discretion to waive a ground of inadmissibility relating to a non-citizen's unlawful presence. And yet, under that same enabling statute, Congress expressly stripped federal courts of jurisdiction by stating that no court shall have jurisdiction to review a decision or action by the Secretary regarding a waiver under this clause. That plain language sweeps broadly, and under the best reading of the statute, the jurisdiction stripping provision applies to plaintiff's unreasonable delay claim of challenging USCIS's pace of adjudicating his unlawful presence waiver application. And that reading is consistent with Congress's choice to reduce procedural protections for discretionary relief, such as this waiver, which is a matter of governmental grace. As the Supreme Court in Patel and this Court in Procovi have recognized, Congress has sharply circumscribed judicial review of the discretionary relief process. And this Court's decision in Procovi forecloses most of Mr. Soni's arguments to the contrary. And this case is not about agency in action. Mr. Soni acknowledges that USCIS is processing other applications. The real issue that Mr. Soni has is that USCIS isn't prioritizing his application. As the District Court correctly observed, Mr. Soni's petition for a waiver is not being processed in a vacuum. As he acknowledges, many other applications are pending and being acted upon. His quarrel is the fact that he's not among the happy few. That's what this case is all about. Mr. Wen, let's talk a little bit about what's going on in other courts. I understand the same question of the interpretation of the jurisdiction stripping was argued in the Fourth in January of 24, in the Eighth Circuit in November of 23, also argued in the Ninth. You provided us with a Rule 28J letter with regard to the Fifth. Are there any opinions that have come out? Are each of the fellow circuit courts considering the exact same interpretation? Question is here. Among the courts that you just talked about, yes, they're considering the exact same question. Whether 1182A9B5 precludes an APA challenge regarding unreasonable delay of the pendency of a provisional unlawful presence waiver application. And in terms of rulings, there's only the recently published decision in Chidjadi. Yes. And so just to clarify, Chidjadi has to do with a similar jurisdiction stripping provision. It doesn't have to do with 1182A9B5. It has to do with a sister jurisdiction stripping provision passed under the 1996 amendments to the INA, Chidjadi, 1252A2B2. So these are, and they have contained very, very similar language. Other than the Fourth, Eighth, and Ninth, and Us, any other federal appellate courts considering the question of the interpretation of this 1182A9B5? Briefing is due in Fifth Circuit and Sixth Circuit appeals in July. Thank you. Thank you. And alternatively, just briefly, this court may affirm on 12B6 grounds, because plaintiff's claim is unreviewable under Norton and 7061 of the APA, the statutes and regulations show that these waivers are fully discretionary. And where an agency is not required to do something, a court cannot compel an agency to act, let alone to act faster. So Mr. Sony cannot use federal courts to compel USCIS to expedite his application over thousands of other applicants, or as the Supreme Court remarked in Norton, to seek wholesale improvement of a program by court decree. And if there are no further questions, we ask that this court affirm the district court below. Thank you. Thank you, Your Honor. Thank you. Anything further, Mr. Banas? Thank you, Your Honors. First, Chijati from the Fifth Circuit and Tagula from the Eighth Circuit have nothing to do with this case. I was fortunate enough to be the attorney on both of those cases. They relate to 8 U.S.C. 1282A2B2 that does not have the language of regarding. So those are percolating their way up still and are irrelevant to this case. The only cases that are pending right now are— Maybe what we should do is issue an injunction providing that no statute can have more than three subsections. 1182A9B4 is just an excrescence. If we're really going to set things to right, maybe we should do that. Well, and Your Honor, they will take that to heart in their regulations. And unfortunately, one of the regulations that I want to raise is 8 CFR 212.7E8 that, contrary to my colleague's representations to this court, requires the agency to make a decision on this application because it says U.S.C.I.S. will adjudicate a provisional waiver application. I think they plan to. I mean, he's not making a representation that they have no plans to. Your Honor, the 12B6 argument is that they do not have a—they're not required to. And that's the second half of the brief they raised here for the first time. The district court didn't rely on that. But to argue that they do not have a duty defies the plain language of their own regulation. And if you think it's ambiguous, you can look at the proposed rulemaking that says basically once filed, U.S.C.I.S. will adjudicate the provisional waiver. So I agree. That's not something they should be arguing because it's plain in the regulation. But they brought it up, so I wanted to address it. The final thing here is it seems like the government wants to take the position that any discretionary benefit, anything that says may, embodies the discretion to make the decision or not. And the Supreme Court in 1954 said if the word discretion means anything in a statutory administrative grant of power, it means that the recipient of that discretion must exercise authority. And here, Judge Easterbrook, you said it's 42.6 months. That is a question of fact. And every time I've been able to do discovery in these types of delay cases, we've learned there is no rule of reason. Applications skip back and forth. And so applications filed after Mr. Soney may have already gotten approvals. And there's no unique reason why Mr. Soney hasn't. And it's those questions of fact we need to get into before a court can rule in our favor. And I would just point to the Fourth Circuit case in Gonzalez where they dealt with this in a footnote. And they simply said the regulation requires it, and we don't know what it's going to show. In fact, they said plaintiffs will probably lose, but they have the right to go and find out what's actually happening. And that's all we're asking to do, so that Mr. Soney can regularize his status and continue to provide assistance to a 78-year-old mother who has dementia, which is the subject of the hardship waiver. And I don't want that to be lost here. Thank you, Your Honor. Thank you, counsel. The case is taken under advisement, and the court will be in recess.